IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

| | |
|---|---|
| Hard Rock Café International (USA), Inc., a Delaware Corporation, | Case No. 0:17-cv-62013-BB |
| and | |
| Tarsadia Hotels, a California corporation, | Hon. Beth Bloom |
| Plaintiffs, | |
| v. | |
| RockStar Hotels, Inc., a Florida corporation, | JURY TRIAL DEMANDED |
| Defendant. | |

DECLARATION OF LAURA L. CHAPMAN
IN SUPPORT OF DEFENDANT ROCKSTAR HOTELS, INC.'S,
MOTION FOR ATTORNEYS' FEES AND COSTS

I, Laura L. Chapman, declare as follows:

1. I am an attorney admitted *pro hac* vice to practice before this Court. I am a partner with Sheppard, Mullin, Richter & Hampton LLP ("SMRH"), attorneys of record for Defendant, RockStar Hotels, Inc. ("RockStar"). This declaration is submitted in support of Defendant RockStar Hotels, Inc.'s Motion for Attorneys' Fees and Costs.

I.   FACTUAL BACKGROUND

2. Plaintiff reportedly earns more than half a billion dollars a year in revenue from its Florida holdings alone. Attached as **Exhibit A** is a true and correct copy of an

article from the Miami Herald entitled, "Seminole Hard Rock collects $579 million — more than 8 racetrack casinos combined," Miami Herald, August 08, 2017 03:31 PM, available at https://www.miamiherald.com/entertainment/article166085722.html. In pertinent part, the article states, "The Seminole Hard Rock Hotel & Casino has continued raking in the casino revenue...The Hollywood property's haul for the fiscal year ending June 30, 2016 were more than $579 million – more than what the eight South Florida pari-mutuel casinos earned combined."

3.  Plaintiff sent a cease and desist letter to Defendant in March 2017, before my firm represented Defendant in this matter. A true and correct copy of that letter is attached as Exhibit L to the complaint Hard Rock filed in this action. (Dkt. 1-12). The letter makes it clear that Plaintiff always knew there was no likelihood of confusion and therefore no trademark infringement. Page two of the letter states "your use of RockStar Hotels, both as a trademark and through your website, is *potentially*[1] confusing to the public, and *potentially* damaging to our client's distinctive and iconic brand." "Potentially" does not meet the "likelihood of confusion" or "irreparable harm" showings for a preliminary injunction. No evidence developed on these issues from the time the letter was sent in March 2017 to the time the complaint was filed in October 2017. Page one of the letter states "any business in the hotel industry that uses the word 'Rock' ***and** associating with music* is of great concern to our client." But RockStar's website doesn't reference music – it is focused on luxury travel and being treated special and having special experiences, as

---

[1] Emphasis added unless specified otherwise.

the Court noted in its Omnibus Order, Dkt. 76 at 14-15. The home page says "travel like a Rockstar" – but the common usage of the term "Rock Star" is not necessarily associated with music; rather the phrase refers to "a person treated as a celebrity, especially in inspiring fanatical admiration."

4. Despite the flaws in Plaintiff's case, it filed the complaint in this action on October 13, 2017. I first reviewed it in early November 2017. The factual allegations are skeletal at best and the complaint was obviously deficient, even at first glance. As one example among others, there is a claim for trade dress infringement, but the trade dress was not identified. Even so, I did not believe a motion to dismiss would be a good expenditure of the client's limited resources, since it is often the case that courts grant leave to amend. We therefore filed an answer to the complaint on November 22, 2018.

5. Plaintiff filed a second amended motion for preliminary injunction on November 20, 2018 (Dkt. 29), as the prior two were denied by the court because Plaintiff had not effectuated service of the complaint.

6. We served written discovery on December 22, 2018 and had to make many efforts to obtain compliance. True and correct copies of some of those efforts are shown in **Exhibit B**.

7. The evidentiary hearing on the motion for preliminary injunction was held on January 12, 2018. Because our client, the Defendant, had to prevail in this case in order to stay in business, we not only prepared a thorough opposition to the motion for preliminary injunction, but also retained trademark survey expert, Sarah Butler of NERA on January 29, 2018, to design a likelihood of confusion survey. This survey was filed

with the court (Motion for Leave to Admit New Evidence in Opposition to Plaintiffs' Motion for Preliminary Injunction, Dkt. 60). The survey was necessary to show no likelihood of confusion and therefore no liability.

8. Ms. Butler is well-regarded in the profession and her surveys and testimony have been accepted by courts. Her survey in this action shows essentially no confusion. (Dkt. 60.) I made the strategic decision to disclose the results of this survey in February 2018 to Plaintiff's counsel and the Court, months before the expert discovery deadline, in an effort to end the case and stop the legal fees and costs from being incurred. I have handled many trademark infringement cases across the country and have never before disclosed any expert report before the deadline, as early disclosure by one party of expert opinion can put that party at a strategic disadvantage. I decided to do this only reluctantly in an effort to avoid protracted litigation and the expense that would involve for the defendant. Attached as **Exhibit C** is a true and correct copy of the cover email transmitting Ms. Butler's expert report that my colleague, Yasamin Parsafar, sent to Plaintiff's counsel on February 12, 2018. In pertinent part, it states: "The results of this survey show that there is no basis for plaintiffs' claims and the complaint should be dismissed with prejudice."

9. After I disclosed the survey I made many efforts to try to streamline the litigation and save my client money by, among other things, suggesting an early trial date and inviting Plaintiff's counsel to respond to the survey so we could evaluate the case and get it resolved. Attached as **Exhibit D** are true and correct copies of emails I sent to and received from opposing counsel toward that end. None of my significant efforts got any

traction. Plaintiff refused to withdraw the motion for preliminary injunction and insisted on continuing to litigate the case.

10. In May of 2018, I retained Hal Poret, a well-regarded survey expert whose opinions have been admitted by courts and who has his own firm, to design a secondary meaning survey. I believe it was necessary to retain Mr. Poret to develop the defenses necessary to prevail and save Plaintiffs' business. The survey results show that there is no secondary meaning in ROCK STAR SUITES, plaintiff's licensor's registered mark. This means that the alleged trademark is invalid. Based on the results of this secondary meaning survey, I met and conferred with Plaintiff in June on a motion for leave to file a counterclaim to cancel the registration for ROCK STAR SUITES. I raised this issue on June 6, 2018 and again on June 19, 2018. Attached as **Exhibit E** is a true and correct copy of the email I sent on June 6, 2018 regarding amending the complaint. In pertinent part, the email states that unless Plaintiff is interested in settling the case, "we [RockStar] will proceed with our motion to amend our complaint to seek cancellation of the registration for ROCK STAR SUITES." On June 19, 2018, I sent counsel an email making it clear that RockStar would pursue cancellation of the ROCK STAR SUITES registration if the claims were not dismissed with prejudice to eliminate the threat of future meritless claims.[2] In response, on June 22, Plaintiff rushed to file this motion for dismissal without prejudice to avoid a counterclaim seeking the cancellation of the registration.

---

[2] This email is not attached as an exhibit to my declaration because it is a Rule 408 settlement communication.

SMRH:487885089.3 -5-

11.    RockStar notified Plaintiffs as early as July 6, 2018 that its fees and expenses as of that day were approximately $462,347.46. (Dkt. 82 at 6.) The parties engaged in settlement discussions and Plaintiffs were not willing to pay RockStar's fees or costs.

## II.    ROCKSTAR'S ATTORNEYS' FEES AND COSTS

12.    The cost of defending this action lawsuit in the eleven months that it has been pending has caused significant harm to Defendant. Defendant has incurred almost as much as it earned last year (Jan 12, 2018 Hrg. Tr at 104:17-18) in attorneys' fees and expert costs, in connection with its defense of this action, as follows:

| | |
|---|---:|
| Attorneys' Fees Through Dismissal on July 31, 2018 | $398,528.50 |
| Costs Through Dismissal on July 31, 2018 | $4,555.93 |
| Likelihood of Confusion Survey Expert | $33,317.50 |
| Secondary Meaning Survey Expert | $45,000.00 |
| Attorneys' Fees Incurred to Date for this Motion | $39,862.00 |
| **Total** | **$521,263.93** |

### A.    ATTORNEY FEES THROUGH DISMISSAL

#### i.    <u>My Experience and Qualifications</u>

13.    I am the co-practice group leader for our firm's intellectual property practice group. I have been a licensed attorney since 1993 and have handled a significant number of litigation matters in the twenty five years that I have been in practice. Over the past ten years or so, most of the work I have done is trademark litigation in federal courts across the country. A trademark case in which I represented a very large defendant (and which we won) was named Trademark Case of the Year by Law 360 in 2016. I have been

recognized by the leading legal newspaper in California, the Daily Journal, as a top IP litigator in the State of California for the past two years.

14.  SMRH has significant experience litigating trademark cases.

### i. My Billing Rate

15.  My billing rate was $695.00 an hour from commencement of this litigation until January 2018, and beginning January 1, 2018 through the present, my billing rate has been $730.00 an hour.

### ii. SMRH Invoices for Professional Services Through Dismissal

16.  Attached as **Exhibit F** are true and correct copies of the SMRH invoices for legal work and costs in this case from commencement of the litigation through dismissal of the case on July 31, 2018 (the "Invoices"). These Invoices were produced by RockStar bearing Bates numbers ROCKSTAR0001069 through and including ROCKSTAR0001158. The fees and costs incurred, as well as the hourly rates, work performed, and time spent by all timekeepers, are all set forth in detail in the Invoices. In addition, each invoice contains a "Summary of Timekeeper Fees" which summarizes each timekeeper's hours, average rate per hour[3], and amount billed for that invoice. Three invoices contain limited redactions for attorney-client privilege and work product information. (*see* Ex. F at ROCKSTAR0001116-1117; ROCKSTAR0001121; ROCKSTAR0001149.)

---

[3]Some timekeepers for whom RockStar seeks attorneys' fees experienced an increase in their hourly rate during the litigation. Each attorney will attest to her rate per hour in her respective declaration. In addition, I provide the hourly rates for Paralegal Yancy Meneses and Litigation Support Specialist Stephanie Limbaugh in my declaration in paragraphs 20 and 23.

### iii. My Tasks and Fees Through Dismissal

17. The Invoices accurately reflect the time I spent on this case, the tasks that I completed, and the costs that RockStar incurred from the filing of this lawsuit on October 13, 2017 (Dkt. 1) through dismissal with prejudice on July 31, 2018. As reflected in the Invoices, I spent 155.6 hours working on this case from inception through July 31, 2018, totaling $112,503.00 in fees. My staff arrived at this number by adding together the "Dollars" amount charged to RockStar for my entries in the "Summary of Timekeeper Fees" section provided on the last or second to last page of each Invoice. (*See* "Summary of Timekeeper Fees for Laura Chapman, at ROCKSTAR0001082 ($11,120.00); ROCKSTAR0001095 ($10,425.00); ROCKSTAR0001105 ($24,747.00); ROCKSTAR0001118 ($25,477.00); ROCKSTAR0001130 ($3,650.00); ROCKSTAR0001138 ($7,957.00); ROCKSTAR0001145 ($18,761.00); ROCKSTAR0001151 ($2,774.00); ROCKSTAR0001158 ($7,592.00).)

18. As reflected in the Invoices, the following is a summary of the tasks I worked on in defending against Plaintiffs' claims through dismissal:

    a. Develop case strategy and draft Rockstar's Answer (Dkt. 32);

    b. Develop strategy for and draft Defendant's Opposition to Plaintiff's Second Amended Motion for Preliminary Injunction (Dkt. 37);

    c. Revise discovery requests to Plaintiff Tarsadia Hotels;

    d. Prepare for hearing on Plaintiffs' motion for preliminary injunction, including creating demonstratives;

    e. Attend hearing on Plaintiffs' motion for preliminary injunction;

f. Develop strategy and confer with experts Sarah Butler and Hal Poret regarding likelihood of confusion and secondary meaning surveys; review and analyze surveys;

g. Draft Defendants' Closing Argument in Support of its Opposition to Plaintiff's Second Amended Motion for Preliminary Injunction (Dkt. 62);

h. Revise Unopposed Motion to Continue Trial (Dkt. 64);

i. Develop strategy regarding Defendant's Reply in Support of its Motion for Leave to Admit New Evidence and Opposition to Plaintiff's Cross-motion to Strike (Dkt. 66);

j. Draft discovery requests to Plaintiff Hard Rock Café International (USA), Inc.;

k. Draft Defendant's Opposition to Plaintiffs' Motion to Excuse Co-Plaintiff Tarsadia Hotels from Personally Appearing at Mediation (Dkt. 70);

l. Draft mediation brief;

m. Prepare for and attend mediation in Boca Raton, Florida;

n. Revise draft settlement agreement;

o. Draft Opposition to Plaintiff's Motion for Voluntary Dismissal Without Prejudice and Request that Dismissal be Conditioned on Payment of Defendants' Fees and Costs (Dkt. 82);

  p. Confer with opposing counsel throughout litigation regarding discovery disputes, mediation and settlement negotiations, and the exceptional weakness in Plaintiff's claims;

  q. Confer with RockStar about case strategy throughout litigation, including preparing reports regarding various strategy decisions, such as reports regarding the hearing on preliminary injunction and the parties' mediation.

  iv. **Senior Paralegal Yancy Meneses' Tasks and Fees Through Dismissal**

19. One of our firm's senior paralegals, Yancy Meneses, worked on this litigation. Ms. Meneses is a senior paralegal with more than twenty-five years of experience managing complex intellectual property litigation. She has actively participated at numerous proceedings, trials, and appeals in Federal Courts, the International Trade Commission, and the U.S. Patent & Trademark Office before the Board of Patent Appeals & Interferences. Ms. Meneses earned her Litigation Specialist Certificate from the University of West Los Angeles, an ABA-approved paralegal program. She is a member of the Orange County Paralegal Association and the Litigation and Intellectual Property Law Sections of the State Bar of California.

20. Ms. Meneses's rate was $340.00 an hour from commencement of the litigation until January 2018, and from January 1, 2018 to the present, her rate has been $350.00. As reflected in the Invoices, she spent 11.1 hours on this matter from commencement to dismissal on July 31, 2018, totaling $3,849.00 in fees. My staff arrived

at this number by adding together the "Dollars" amount charged to RockStar for her entries in the "Summary of Timekeeper Fees" section provided on the last or second to last page of each Invoice. (*See* "Summary of Timekeeper Fees for Yancy M. Meneses, Ex. F at ROCKSTAR0001095 ($1,224.00); ROCKSTAR0001118 ($1,260.00); ROCKSTAR0001130 ($525.00); ROCKSTAR0001145 ($140.00); ROCKSTAR0001151 ($700.00).)

21. As reflected in the Invoices, the following is a summary of the tasks she performed in defending against Plaintiffs' claims:

    a. Cite checking RockStar's Opposition to Plaintiff's MPI (Dkt. 37);

    b. Cite checking Rockstar's Reply in Support of its Motion for Leave to Admit New Evidence and Opposition to Plaintiff's Cross-Motion to Strike (Dkt. 66);

    c. Capturing websites of all Hard Rock hotels in the United States for the purpose of analyzing Plaintiffs' trade dress claims;

    d. Ensuring compliance with local rules for various filings;

    e. Facilitating document production; and

    f. Conferring with attorneys regarding various tasks.

    **v.**   **Trial Support Specialist Stephanie Limbaugh's Qualifications, Tasks, and Fees Through Dismissal**

22. One of our firm's Litigation Support Specialists, Stephanie Limbaugh, worked on this litigation. Since 2006, Ms. Limbaugh has assisted with more than 100 full and mock trials, arbitrations, mediations and other legal proceedings. She has vast

experience crafting and presenting multi-media demonstratives at all stages of a case, tailoring and adapting presentations to the needs of her teams and the Court.

23. Ms. Limbaugh's rate is $360.00 an hour. As reflected in the "Summary of Timekeeper Fees" in the Invoice for Professional Services through January 31, 2018 (Ex. F at ROCKSTAR0001105), Stephanie worked 7.7 hours preparing demonstratives for the preliminary injunction hearing held on January 12, 2018, totaling $2,772.00 in fees.

24. Collectively, Michelle Kahn, Yasamin Parsafar, Anna Dewan, Yancy Meneses, Stephanie Limbaugh, and I spent over 170 hours responding to Plaintiffs' Motion for Preliminary Injunction (Dkt. 29) and preparing for the January 12, 2018 hearing on it. My staff arrived at this number by adding together all time entries listed in the Invoices for these Timekeepers described as pertaining to responding to Plaintiffs' preliminary injunction motion and preliminary injunction hearing preparation. (*See* Ex. F invoices at ROCKSTAR0001069-82, ROCKSTAR0001083-95, and ROCKSTAR0001096-1106.)

### B.   EXPERT COSTS THROUGH DISMISSAL

25. I engaged Sarah Butler of NERA Economic Consulting on January 29, 2018 to design a likelihood of confusion survey in the hope that the results would be compelling to Plaintiff and would encourage Plaintiff to dismiss the case. Attached as **Exhibit G** are true and correct copies of the invoices pertaining to NERA's work, dated February 14, 2018 and March 13, 2018. These invoices were produced by RockStar bearing Bates numbers ROCKSTAR0001160 through and including ROCKSTAR0001161. As the invoices attached in Exhibit G reflect, the costs for Sarah Butler and NERA Economic

Consulting for their work on Defendant's likelihood of confusion survey totaled $33,317.50. (Ex. G at pp. 1-2.)

26. In May of 2018, I retained Hal Poret of Hal Poret LLC, a well-regarded survey expert, to design a secondary meaning survey regarding the term "Rock Star" for hotel suites. Attached as **Exhibit H** is a true and correct copy of the invoice pertaining to Hal Poret's work, dated May 21, 2018. This invoice was produced by RockStar bearing Bates number ROCKSTAR0001159. As the invoice in Exhibit H reflects, the costs for Hal Poret's work on Defendant's secondary meaning survey totaled $45,000.

### C.  MEDIATION COSTS

27. On May 9, 2018 I attended the court-ordered mediation in Boca Raton, Florida with my partner Michelle Kahn. Attached as **Exhibit I** are true and correct copies of the mediation invoices, produced by RockStar bearing Bates numbers ROCKSTAR0001162 and ROCKSTAR0001163, showing that RockStar incurred $1,575.00 for this court-ordered mediation.

28. In addition, as itemized in the Invoices for professional services through April 30, 2018 and June 30, 2018 (Ex. F at ROCKSTAR0001138 and ROCKSTAR0001152), RockStar incurred $1,821.69 for Ms. Kahn's and my travel to and from the mediation in Boca Raton, Florida. The Invoices show that these costs were incurred for our airfare, hotels, taxis, meals, parking, car rentals, and bridge tolls[4].

---

[4] The "E-Discovery Data Hosting Fees" costs listed at ROCKSTAR0001152 was not included in this calculation, and neither was the "E-Discovery Data Hosting Fees," mediation fee, and Federal Express costs listed at ROCKSTAR0001138.

### D. PRELIMINARY INJUNCTION COSTS

29. I attended the hearing on Plaintiffs' Motion for Preliminary Injunction on January 12, 2018 in Miami, Florida.

30. As itemized in the Invoice for professional services through January 31, 2018 (Ex. F at ROCKSTAR0001106), RockStar incurred $1,159.24 for my travel to and from the hearing in Miami, Florida. The Invoice shows that these costs were incurred for my airfare and baggage, hotel, meals, bridge toll, taxis, and parking[5].

### E. ROCKSTAR'S FEES FOR THIS MOTION

31. Between August and September 2018, RockStar incurred additional fees for bringing its Motion for Attorneys' Fees and Costs (the "Motion"). Attached as **Exhibit J** are true and correct copies of the SMRH invoices for legal fees and costs that RockStar incurred during the months of August and September 2018 ("Motion Invoices"). The Motion Invoices identify the fees incurred, hourly rates, work performed, and time spent by all timekeepers. Each of the Motion Invoices contain a "Summary of Timekeeper Fees" summarizing each timekeeper's hours, average rate per hour, and amount billed for that invoice. As reflected in the Motion Invoices, RockStar incurred $36,577 in fees to date for bringing the Motion.[6]

32. My billing rate remains at $730.00 an hour. As reflected in the Motion Invoices, I spent 4.50 hours working on the Motion in September 2018, totaling $3,285.00

---

[5] The Federal Express, Color Copies, Duplication, and Telephone costs were not included in this calculation.
[6] This calculation includes only those fees associated with my time, as well as Michelle Kahn, Yasamin Parsafar, and Anna Dewan's time, spent on the motion.

Case 0:17-cv-62013-BB   Document 96-1   Entered on FLSD Docket 10/01/2018   Page 15 of 17

in fees. (*See* Ex. J.) This number is provided in the "Dollars" amount charged to RockStar for my entries in the "Summary of Timekeeper Fees" sections of the September 2018 Motion Invoice. I did not work on the Motion in August 2018.

33. As reflected in the Motion Invoices, I spent 4.50 hours revising RockStar's Motion for Attorneys' Fees and Costs.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 1, 2018, at San Francisco, California.

*Laura Chapman*
LAURA L. CHAPMAN

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California         )
County of San Francisco     )

On  October 1, 2018 , before me,  Yolanda Hogan , a Notary Public, personally appeared  Laura Chapman , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

[Seal: YOLANDA HOGAN, Notary Public - California, San Francisco County, Commission # 2167035, My Comm. Expires Oct 7, 2020]

Signature  *Yolanda Hogan*

## CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2018, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the below Service List via transmission of Notice of Electronic Filing generated by CM/ECF.



*s/ Nancy Pritikin*
Nancy Pritikin

Attorneys for Plaintiffs

Jeremy T. Elman, Esq.
DORSEY & WHITNEY LLP
305 Lytton Avenue
Palo Alto, CA 94301
Tel:   650-843-2732
Fax:   650-618-1955
Email: *elman.jeremy@dorsey.com*