UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-CV-62013-BLOOM/VALLE

HARD ROCK CAFÉ INTERNATIONAL
USA, INC. and TARSADIA HOTELS,

      Plaintiffs,

v.

ROCKSTAR HOTELS, INC.,

      Defendant.

_____/

## REPORT AND RECOMMENDATION TO DISTRICT JUDGE

THIS MATTER is before the Court on Defendant's Motion for Attorneys' Fees and Costs (ECF No. 96) (the "Motion"). United States District Judge Beth Bloom has referred the Motion to the undersigned for a Report and Recommendation. (ECF No. 98). Accordingly, having reviewed the Motion, Plaintiffs' Response (ECF No. 97), Defendant's Reply (ECF Nos. 102, 103), the parties' supplemental filings (ECF Nos. 104, 105), the transcript of the preliminary injunction hearing (ECF No. 57), and being otherwise duly advised in the matter, the undersigned respectfully recommends that the Motion be **DENIED**.

## I.      BACKGROUND

### A.  *Procedural Summary*

On October 13, 2017, Plaintiffs Hard Rock Café International USA, Inc. and Tarsadia Hotels ("Plaintiffs") filed a seven-count Complaint alleging that Defendant RockStar Hotels, Inc. ("Defendant") was infringing on Plaintiffs' various trademarks and trade dress by using the name

"RockStar" and a black and purple color scheme for its logo and website, among other similarities.[1] (ECF No. 1).  On November 20, 2017, Plaintiffs filed an Amended Motion for Preliminary Injunction, seeking to bar Defendant from using its mark and trade dress.[2]  *See* (ECF No. 29).  The Court held an evidentiary hearing on January 12, 2018, where the parties presented witness testimony.  (ECF Nos. 56, 57).

On June 13, 2018, the Court denied the preliminary injunction, finding that Plaintiffs had failed to establish two of the requisite four elements for such relief.  *See generally* (ECF No. 76). First, the Court found that Plaintiff did not establish a substantial likelihood of success on the merits.[3]  *Id.* at 54-55.  Second, the Court found that Plaintiffs failed to show irreparable imminent injury.  *Id.* at 55-57.  Accordingly, because Plaintiffs failed to establish the existence of these two elements, the Court denied Plaintiff's request for a preliminary injunction.

Nine days after the Court's order denying the preliminary injunction, Plaintiffs filed a motion to voluntarily dismiss the Complaint without prejudice.  (ECF No. 77).  In its response, Defendant did not object to a dismissal without prejudice provided Plaintiffs agreed to pay

---

[1] More specifically, the Complaint alleges trademark infringement under 15 U.S.C. § 1114 of the Lanham Act (Count I); trademark infringement, trade dress infringement, false designation of origin and unfair competition under 15 U.S.C. § 1125(a) of the Lanham Act (Count II); trademark dilution under 15 U.S.C. § 1125(c) of the Lanham Act (Count III); violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") under Florida Statute § 501.204 (Count IV); violation of trademark dilution under Florida Statute § 495.151 (Count V); trademark infringement, passing off and unfair competition under Florida law (Count VI); and false advertising under Florida law (Count VII).  *See generally* (ECF No. 1).

[2] Plaintiff filed two prior Motions for Preliminary Injunction on October 16 and November 8, 2017, which the Court denied without prejudice for failure to effect proper service.  *See* (ECF Nos. 5, 6, 15 and 16).

[3] In making this determination, the Court weighed the required "likelihood of confusion" factors and concluded that Plaintiffs failed to show a likelihood of confusion between Defendant's "RockStar Hotels" mark and either the "Hard Rock Hotels" or the "Rock Star Suites" mark.  (ECF No. 76 at 45).  In addition, the Court found that Defendant's website and social media postings did not infringe on Plaintiffs' trade dress.  *Id.* at 53-54.

Defendant's attorneys' fees and costs incurred in defending the action.  *See* (ECF No. 82).  The Court agreed with Defendant and conditioned Plaintiffs' voluntary dismissal without prejudice on payment of Defendant's litigation-related expenses.  (ECF No. 87 at 4).  The Court then gave Plaintiffs time to decide whether they would accept or reject that condition.  *Id.*  Six days later, on July 19, 2018, Defendant filed a motion to dismiss the case with prejudice, requesting that each party bear its own attorneys' fees and costs.  (ECF No. 89).  In response, although Defendant did not object to the dismissal with prejudice, it requested the opportunity to file a motion for attorneys' fees and costs under the Lanham Act's "exceptional case" provision and a motion for fees and costs under FDUTPA and Federal Rule of Civil Procedure 54(d).   (ECF No. 94).  The Court granted Defendant's request, and the instant Motion followed.  *See* (ECF Nos. 95, 96).

### B.  *The Motion for Attorneys' Fees and Costs*

Defendant seeks approximately $438,390 in attorneys' fees.  *See* (ECF No. 96 at 4-5).  According to Defendant, it is entitled to its reasonable attorneys' fees as the prevailing party because this is an "exceptional case" under the Lanham Act, 15 U.S.C. § 1117, and post-*Octane Fitness* case law.  *Id.; see Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, (2014).  Defendant also seeks more than $82,000 in costs under Federal Rule of Civil Procedure 54(d).  (ECF No. 96 at 4-5) (listing costs incurred through dismissal of the case and expert survey costs).  Defendant also seeks attorneys' fees and non-taxable costs as the prevailing party under FDUTPA.  *Id.* at 11.  In total, Defendant requests $521,263.93 in fees and costs.  *Id*.

Plaintiffs oppose the Motion on several grounds.  First, Plaintiffs argue that this case is not "exceptional" under § 1117 and *Octane Fitness* because they voluntarily dismissed it at an early stage in the litigation soon after the Court denied Plaintiffs' request for a preliminary injunction.  (ECF No. 97 at 2-3).  Plaintiffs also argue that fees and costs should be denied on procedural

grounds because Defendant failed to serve them with a draft motion prior to its filing, as required by Local Rule 7.3(b).[4]  (ECF No. 97 at 2, 15).  Alternatively, pursuant to Federal Rule of Civil Procedure 54(d)(2)(C), Plaintiffs request that the Court bifurcate the issues of entitlement and amount of fees and costs.  *Id*. at 16.  As to costs, Plaintiffs contend that Defendant is only entitled to $97.20 as taxable cost (i.e., 50% of the cost of the transcript of the preliminary injunction hearing).  *Id.* at 4 n.1.

## II.   LEGAL STANDARD

### A.  The American Rule on Entitlement to Fees

Generally, under the "American Rule," each party must pay its own attorney's fees, unless a statute or contract provides otherwise.  *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 253 (2010) (internal citations omitted); *see also In re Martinez*, 416 F.3d 1286, 1288 (11th Cir. 2005) (prevailing litigants are generally not entitled to an award of attorneys' fees unless provided by statute or contract).  Here, § 1117 of the Lanham Act permits an award of reasonable attorneys' fees to the prevailing party in "exceptional" cases.  15 U.S.C. §1117.  There is no dispute that Defendant is the prevailing party.  The Motion thus turns on whether this is an "exceptional" case under the Lanham Act.

---

[4] Local Rule 7.3(b) provides that "a draft motion compliant with Local Rule 7.3(a)(1)-(8) must be served but not filed at least thirty (30) days prior to the deadline for filing any motion for attorneys' fees and/or costs."  S.D. Fla. L.R. 7.3(b).  Plaintiffs ask the Court to deny the Motion based on Defendant's admitted failure to provide Plaintiffs with an advance draft of the Motion.  *See* (ECF No. 97 at 15).  However, because it is within the court's discretion whether to require strict compliance with Local Rule 7.3, the undersigned will consider the Motion on its merits.  *See Kowalski v. Jackson Nat. Life Ins. Co.*, No. 12-60597-CIV, 2014 WL 4101567, at *4 (S.D. Fla. Aug. 20, 2014) (declining to deny similar motion for non-compliance with Local Rule 7.3).  This is especially appropriate where "the party seeking denial of the Motion has identified no prejudice suffered from the alleged local rules violation."  *Id.*  Here, Plaintiffs have shown no prejudice, as they were aware of Defendant's fees-related arguments through previous filings.  *See, e.g.,* (ECF No. 82 at 6) (detailing amount of fees and costs Defendant would seek); (ECF No. 94 at 3-7) (outlining Defendant's "exceptional case" argument).

### B.  Fees for an "Exceptional Case" Under the Lanham Act

The Lanham Act provides an exception to the "American Rule" that each party must pay its own attorneys' fees.  The Lanham Act's fee-shifting provision states: "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a).

In 2014, the Supreme Court established the current framework for determining what is an "exceptional" case under § 285 of the Patent Act.  *See Octane Fitness,* 572 U.S. at 553.  In *Octane Fitness*, the Court noted that the phrase "exceptional case" in the Patent Act's fee-shifting provision should be interpreted in accordance with its ordinary meaning to mean "uncommon," "rare," or "not ordinary."  *Id.*  Further, "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."  *Id.* at 554.   The Court instructed that whether a case is "exceptional" should be determined on a case-by-case exercise of discretion, considering the "totality of the circumstances" and using a nonexclusive list of factors, including "'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case), and the need in particular circumstances to advance considerations of compensation and deterrence.'"  *Id.* at 554 n.6 (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994)).  Lastly, the Court lowered the requisite evidentiary standard for proving an "exceptional" case from clear and convincing evidence to a preponderance of evidence.  *Id.* at 557.

Recently, the Eleventh Circuit explicitly held that "the exceptional case standard from the Patent Act also applies to cases brought under the Lanham Act."  *Tobinick v. Novella,* 884 F.3d 1110, 1118 (11th Cir. 2018) ("[T]o be an "exceptional case" under the Lanham Act requires only

that a case "stands out from others," either based on the strength of the litigating positions or the manner in which the case was litigated.") (citation omitted).

### III.   ANALYSIS

#### A.  *Procedural Matters: Defendant's Request for a Hearing and Plaintiffs' Request for Bifurcation*

In supplemental filings related to the Motion, Defendant requests a hearing arguing that "the parties sharply contest the relevant facts such that it may be helpful for the Court to have an opportunity to ask questions and assess the circumstances." (ECF No. 104 at 3). After a review of the record, the Motion and related filings, the undersigned concludes that the Motion can be determined on the record. Therefore, Defendant's request for hearing before the undersigned is denied.

The undersigned further recommends against Plaintiffs' request to bifurcate the issue of entitlement to fees and costs from an evaluation of the reasonableness of the amount. *See* (ECF No. 97 at 16). Here, although Plaintiffs request bifurcation, the guidelines for determining bifurcation are set forth in Federal Rule of Civil Procedure 42 (governing consolidation and separation of trials). *See Gables Ins. Recovery v. United Healthcare Ins. Co.*, No. 13-21142-CIV, 2013 WL 4068786, at *2 (S.D. Fla. Aug. 12, 2013). Rule 42 confers broad discretion on the district court to permit bifurcation when it furthers convenience. *Gilbert v. State Farm Mut. Auto. Ins. Co.*, 311 F.R.D. 685, 686 (M.D. Fla. 2015). Specifically, under Rule 42(b), bifurcation is appropriate for "convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). To justify bifurcation, only one of those reasons need be shown. *See Gables Ins.*, 2013 WL 4068786, at *2 (citing *Saxion v. Titan-C-Mfg., Inc.*, 86 F.3d 553, 556 (6th Cir. 1996)). In most cases, "[t]he question of entitlement and amount are routinely decided together without causing

prejudice, confusion, or inconvenience." *Murray v. Playmaker Servs., LLC*, No. 05–CIV–80885, 2007 WL 4563483, at *1 (S.D. Fla. Dec.19, 2007); *see also Gables Ins.*, 2013 WL 4068786, at *2.

Here, the undersigned finds no legitimate reason to bifurcate the issues of entitlement and amount. Moreover, Plaintiffs' request to bifurcate was untimely. Specifically, Local Rule 7.3(a) states that "either party may move the Court to determine entitlement *prior* to submission on the issue of amount." S.D. Fla. L.R. 7.3(a) (emphasis added). "Thus, the Rule requires that a party must first move the court to bifurcate the issues of entitlement and amount" before the briefing on costs and fees begins. *Gables Ins.*, 2013 WL 4068786, at *2. Plaintiffs did not request to bifurcate until they filed their opposition to Defendant's Motion. *See* (ECF No. 97). Thus, Plaintiffs' request to bifurcate should be denied and the Motion should be determined comprehensively on the merits.

### B.  This is Not an "Exceptional Case"

Defendant argues that this case is exceptional both for its lack of substantive strength and the unreasonable manner in which it was litigated. (ECF No. 96 at 6). According to Defendant, Plaintiffs' true motive for bringing this lawsuit was to use their superior financial resources to bring a meritless case with the aim of forcing a start-up company to give up its trademark rather than expend resources defending the case. *See* (ECF No. 96 at 2, 7). After considering the totality of the circumstances, however, the undersigned finds that this is not an "exceptional case" warranting an award of fees. Accordingly, for the reasons discussed below, the undersigned recommends that Defendant's request for fees under the Lanham Act be denied.

#### 1.  Substantive Strength of Plaintiffs' Claims

Under *Octane Fitness*, the Court must first evaluate "the substantive strength of a party's litigating positions (considering both the governing law and the facts of the case)." 572 U.S. at

554. As in patent cases, there is no precise rule or formula for determining whether a Lanham Act case is "exceptional" based on its lack of substantive strength. *Id.* Rather, as with the other *Octane Fitness* factors, courts must use discretion in considering the totality of the circumstances. *Id.*

In the Lanham Act context, some courts have awarded fees when the claim was found to be "objectively baseless." *See, e.g., Fla. Int'l Univ. Bd. of Trustees v. Fla. Nat'l Univ., Inc.*, No. 13-21604-CIV, 2017 WL 3610583, at *4 (S.D. Fla. Aug. 11, 2017) (listing cases using the "objectively baseless" standard), *report and recommendation adopted*, No. 13-CV-21604, 2018 WL 4409885 (S.D. Fla. June 25, 2018). Other courts have awarded fees where the plaintiff offered "extremely weak arguments" to establish that its marks were protectable. *Donut Joe's, Inc. v. Interveston Food Servs., LLC*, 116 F. Supp. 3d 1290, 1294 (N.D. Ala. 2015) (granting defendant fees where plaintiff made no attempt either to argue or present any evidence at summary judgment that its marks had secondary meaning and were protectable). In contrast, other courts—including courts in this District—have declined to award fees where the plaintiff's overall case was at least colorable. *Plant Food Sys., Inc., v. AgroSource, Inc.*, No. 16-CV-80326, 2017 WL 4155356, at *6 (S.D. Fla. July 19, 2017) (declining to award fees where losing party's position during preliminary injunction hearing was not "frivolous or completely unsupported by the evidence"); *Fla. Van Rentals Inc. v. Auto Mobility Sales, Inc.*, No. 8:13-CV-1732-T-36EAJ, 2015 WL 4887550, at *3 (M.D. Fla. Aug. 17, 2015) ("[A]lthough the totality of the evidence supporting the validity of [the] marks was weak, [p]laintiffs overall case was at least colorable," and was not objectively unreasonable or frivolous).

Providing context to the undersigned's evaluation of the substantive strength of Plaintiffs' claims is the District Court's Order denying Plaintiffs' request for a preliminary injunction. (ECF No. 76) (the "Order on the Preliminary Injunction"). In the Order on the Preliminary Injunction,

the District Court found that Plaintiff failed to meet two of the four legal requirements for such relief by failing to: (i) establish likelihood of success on the merits (based on its failure to establish a likelihood of confusion regarding its trademarks and trade dress); and (ii) provide evidence of imminent irreparable harm (as opposed to potential future harm).[5] *See generally* (ECF No. 76). In the instant Motion and related filings, the parties devote substantial time to relitigating the legal and factual issues already decided by the District Court in the Order on the Preliminary Injunction. *See generally* (ECF Nos. 96, 97, 102, 103, 104, and 105). For purposes of the instant Motion, the undersigned need not revisit the District Court's prior findings and instead adopts the District Court's detailed and comprehensive Order, including the specific findings regarding the strength and weaknesses of Plaintiffs' claims. Fully accepting the District Court's determination that Plaintiffs' failed to establish likelihood of success on the merits, the undersigned nonetheless concludes, in the exercise of discretion, that this is not an "exceptional case" warranting an award of fees under the Lanham Act.

First, in response to Defendant's arguments that the claims were "exceptionally weak," Plaintiffs note that their claims were stronger when the litigation began, before Defendant changed its business model and website (from a "soft brand" hotel booking business much like Plaintiffs' to a consumer-member model) to create differences between the two companies. (ECF No. 97 at 7, 9, 11, 12). Although the District Court found that the timing of Defendant's debut of its consumer-member business model and corresponding revamped website was "coincidental" and not done with the "bad faith intent" to thwart the preliminary injunction, *see* (ECF No. 76 at 40-

---

[5] To secure a preliminary injunction, the moving party must establish four elements: (i) a substantial likelihood of success on the merits; (ii) irreparable injury absent an injunction; (iii) that the injury outweighs whatever damage an injunction may cause the opposing party; and (iv) that an injunction is not adverse to the public interest. (ECF No. 76 at 22). The District Court found that Plaintiffs failed to establish the first and second elements.

41), the Court nonetheless recognized that "[w]hen Plaintiffs filed this lawsuit, [Defendant] had not yet announced the launch of its membership model; therefore, Plaintiffs' request for a preliminary injunction was initially based on a version of [Defendant's] predecessor website." *Id.* at 53. The District Court continued: "As the result of these modifications, Plaintiffs' argument as to likelihood of confusion is now limited to [Defendant's] use of "black and purple throughout its website with white text with similar images." *Id.* Against this factual backdrop, the undersigned finds that Plaintiffs' claims were stronger at the beginning of this litigation than they were at the preliminary injunction stage, and thus were at least "colorable." This factor weighs in Plaintiffs' favor. *See, Plant Food Sys.,* 2017 WL 415356, at *6; *see also, Fla. Van Rentals,* 2015 WL 4887550, at *3.

In addition, as the District Court itself noted, "Plaintiffs may not have prevailed at the preliminary injunction stage, but this does not mean that Plaintiffs lacked a good faith basis to file the [preliminary injunction] Motion initially." (ECF No 76 at 58-59). Although Defendant is correct that a party's subjective "good faith" is no longer the relevant standard to determine "exceptionality" under *Octane Fitness, see* (ECF No. 102-1 at 6), the District Court's finding that Plaintiffs' motion for a preliminary injunction was made in good faith is nonetheless a factor that the undersigned considers in reviewing the totality of the circumstances. This factor also weighs in Plaintiffs' favor.

Similarly, although ultimately not determinative of the likelihood of consumer confusion at the preliminary injunction stage, the U.S. Patent and Trademark Office ("USPTO") examining attorney's refusal to register Defendant's marks also weighs in Plaintiffs' favor by buttressing

Plaintiffs' good faith basis for bringing this lawsuit. [6]   Plaintiffs explain that they relied in part on three opinions (dated June 25, 2013, January 11, 2017, and April 10, 2017) by the USPTO examining attorney, first suspending and then denying registration for Defendant's "Rockstar Hotels" mark on the ground that it posed "a likelihood of confusion with the mark of [Plaintiffs'] Rock Star Suites." *See* (ECF No. 76 at 18-20); *see also* (ECF Nos. 29-12 and 29-13) (exhibits to Plaintiffs' Amended Motion for Preliminary Injunction).   In the context of the instant Motion, Plaintiffs' reliance on the USPTO examining attorney's "likely of confusion" analysis and refusal to register Defendant's mark is relevant to Plaintiffs' motive, lending credence to Plaintiffs' explanation that it brought suit to protect its trademarks, not to force Defendant out of business. *See* (ECF No. 97 at 6, 13).

Furthermore, Defendant's reliance on *Florida International University Board of Trustees v. Florida International University Inc.*, No. 13-21604-CIV, 2017 WL 3610583 (S.D. Fla. Aug. 11, 2017) to support its argument that this case should be found "exceptional" is unconvincing. *See, e.g.*, (ECF No. 96 at 8, 10).   According to Defendant, in *Florida International*, the court found that "one de minimis instance of consumer confusion" supported a finding that plaintiff's Lanham Act claims were exceptional for their lack of substantive strength.   (ECF No. 96 at 10); *see Florida Int'l*, 2017 WL 3610583, at *6.   Defendant's argument, however, ignores that the court's consideration of the lack of evidence on consumer confusion was just one of the many evidentiary shortcomings that the court considered in finding the case "exceptional."   *Florida Int'l*, 2017 WL 3610583, at *6 (noting that summary judgment order "was replete with references to [p]laintiff's

---

[6] The District Court found that "preclusive effect is only afforded to decisions of the TTAB [Trademark Trial and Appeal Board]," not to those of an examining attorney at the USPTO.   (ECF No. 76 at 44-45).   Thus, the District Court gave "no weight to the decision of the examining attorney in its analysis," and rejected Plaintiffs' argument that the examining attorney's findings established likelihood of confusion.   *Id.* at 45.

failure to offer evidence in support of [its] claims").  Moreover, under *Octane Fitness*, each case is to be decided on a case-by case exercise of discretion, after considering the totality of the circumstances.  Here, an analysis of the totality of the circumstances leads the undersigned to a different conclusion.

In sum, as discussed above, the record supports Plaintiffs' argument that Defendant's change to its business model weakened Plaintiffs' claims.  Defendant's original business model, combined with the findings of the USPTO examining attorney and the District Court's conclusion that the similarities between the "RockStar Hotels" and "Rock Star Suites" word marks were "more striking" than with the Hard Rock marks,[7] further support Plaintiffs' contention that they "believed in good faith that what [Defendant] was engaging in was a hotel-related business conducted under a musical name and using musical imagery that was likely to cause confusion among consumers."  *See* (ECF No. 97 at 8).  For these reasons, the undersigned finds that Plaintiffs' overall case was at least colorable, and the lack of substantive strength at the preliminary injunction stage does not make this case "exceptional."  *Florida Van Rentals,* 2015 WL 4887550, at *3.  Therefore, the undersigned concludes that Defendant has not met its burden of showing that Plaintiffs' litigating position made this case "exceptional."

### 2.  *Plaintiffs' Overall Litigation Conduct and Motivation for Filing Suit*

Under the second prong of the *Octane Fitness* test*,* a case can be found to be "exceptional" if it was litigated in an unreasonable manner.  572 U.S. at 554.  As in the prior analysis, there is no single test to determine whether a case is "exceptional" for the manner in which it was litigated. *Id.* Thus, in making this determination, courts often consider a non-exhaustive list of factors,

---

[7] Despite its ruling that the USPTO examiner's "likelihood of confusion" determination was not dispositive, the District Court nonetheless found that "[w]ith regard to Rock Star Suites . . . the word mark similarities [with RockStar Hotels] are much more striking."  *See* (ECF No. 76 at 34).

including: (i) whether the plaintiff failed to conduct an adequate pre-filing investigation or to exercise due diligence before filing suit; (ii) whether the plaintiff should have known its claim was meritless and/or lacked substantive strength; (iii) evidence that the plaintiff initiated litigation to extract settlements from defendants who want to avoid costly litigation; (iv) whether a party proceeded in bad faith (noting that bad faith is no longer required to support an award of fees but finding the plaintiff's position was not reasonable); and (v) the existence of litigation misconduct. *Fla. Int'l U. Bd. of Trustees*, 2017 WL 3610583, at *4 (citation omitted).  Considering the totality of the circumstances, these factors weigh in Plaintiffs' favor.

Defendant argues, among other things, that Plaintiffs litigated this case unreasonably by: (i) moving for a preliminary injunction despite knowing they could not meet the requirements for such relief; and (ii) refusing to dismiss their case (even after Defendant shared its expert surveys purportedly showing that Plaintiffs' claims lacked merit) until Defendant threatened to file a counterclaim to cancel Plaintiffs' "Rock Star Suites" trademark.  *See, e.g.,* (ECF Nos. 96 at 2-4, 10-11; 102-1 at 3).

Defendant's first argument fails.  As noted above, the undersigned finds that, although ultimately unsuccessful, Plaintiffs' claims, including the preliminary injunction motion, were nonetheless colorable and filed in good faith.  *See supra* p. 10.  While Defendant prevailed at the preliminary injunction stage, Plaintiffs' arguments were not completely unsupported by the evidence.  *See Plant Food Sys.,* 2017 WL 4155356, at *6 (declining to award fees where plaintiff's arguments were not frivolous or completely unsupported by the evidence).  Thus, it was not unreasonable for Plaintiffs to file the Complaint and move for a preliminary injunction.

Next, Defendant contends that it was unreasonable for Plaintiffs to continue to press their claims after Defendant advised Plaintiffs of Defendant's surveys showing lack of "confusion" and

"secondary meaning." (ECF No. 96 at 4). Defendant argues that Plaintiffs should have dismissed their claims based on the survey results, but Plaintiffs instead forged ahead with the litigation and agreed to dismiss the case with prejudice only after Defendant threatened to file a counterclaim for cancellation of Plaintiffs' "Rock Star Suites" mark for lack of secondary meaning. *Id.* 96 at 2, 9. As Plaintiffs point out, however, Plaintiffs dismissed the case shortly after entry of the Court's June 13, 2018 Order on the Preliminary Injunction. (ECF No. 97 at 3). Indeed, on June 22, 2019— just nine days after the denial of the preliminary injunction—Plaintiffs filed a motion to voluntarily dismiss the case without prejudice. (ECF No. 77). On July 16, 2018, the Court granted Plaintiffs' motion to voluntarily dismiss without prejudice, "contingent upon Plaintiffs' acceptance" that they would pay for Defendant's litigation-related expenses. (ECF No. 87 at 4, 5). Thereafter, as directed by the Court, Plaintiffs elected instead to voluntarily dismiss the case with prejudice, and requested that each party bear their own fees and costs. (ECF No. 89). Ultimately, the Court dismissed the action on July 31, 2018, but allowed Defendant to file the instant Motion. (ECF Nos. 95, 96).

Against this procedural background and considering the totality of the circumstances, the undersigned finds that Plaintiffs did not engage in the kind of dilatory, "scorched earth," or otherwise abusive litigation tactics that would warrant an "exceptional case" finding. Rather, Plaintiffs' actions reflect a swift decision to end the case without extensive litigation. Generally, courts have found cases "exceptional" and awarded fees for litigation misconduct where the litigation involved much more egregious conduct and more protracted litigation, often including substantive and case-dispositive motions. *See, e.g., Pergo (Europe) A.B. v. Stanley Black & Decker, Inc.,* No. 4:16-CV-319-HLM, 2018 WL 3949746, at *3 (N.D. Ga. May 5, 2018) (awarding fees to prevailing Lanham Act defendant after extensive discovery and cross motions for summary

judgment); *Sazerac Co., Inc., v. Fetzer Vineyards, Inc.,* No. 3:15-CV-04618-WHO, 2017 WL 6059271, at *8 (N.D. CA. Dec. 7, 2017) (awarding fees to prevailing Lanham Act defendant where plaintiff proceeded to trial for injunctive relief without developing evidence of harm); *Domond v. Peoplenetwork APS,* No. 16-24026-CIV-MORENO, 2017 U.S. Dist. LEXIS 214666, at *6-7 (S.D. Fla. Nov. 14, 2017), *aff'd* 2019 U.S. App. LEXIS 26824 (11th Cir. 2018) (awarding fees as "exceptional case" after protracted litigation, including arbitration proceeding, dismissal, and appeal); *Shipping and Transit, LLC v. A1A Auto, Inc.*, 283 F. Supp. 3d 1290, 1300-02 (S.D. Fla. Oct. 20, 2017) (awarding fees to prevailing Patent Act defendant based partly on plaintiff's nationwide pattern of pervasive litigation); *Fla. Int'l U. Bd. of Trustees,* 2017 WL 3610583, at *1, 6-7 (awarding fees to Lanham Act defendant after summary judgment); *Advanced Ground Info. Sys., Inc. v. Life360, Inc.,* No. 14-CV-80651-MIDDLEBROOKS, 2015 WL 11401854, at *1 (S.D. Fla. Dec. 1, 2015) (awarding fees to prevailing Patent Act defendant after trial, where plaintiff's claims were extremely weak and litigation was designed to extract a settlement); ); *Donut Joe's,* 116 F. Supp. 3d at 1294-95 (awarding fees to prevailing Lanham Act defendant after grant of summary judgment as to all claims).  Indeed, fees are awarded on litigation conduct that "goes beyond mere stonewalling, excessive discovery demands, or otherwise burdensome litigation strategies." *Fla. Int'l U. Bd. of Trustees,* 2017 WL 3610583, at *4 (citations omitted).  As the Supreme Court observed, it is "the rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees." *Octane Fitness*, 572 U.S. 555.  This is not such a case.

Furthermore, Defendant's repeated assertion that Plaintiffs moved to dismiss the case only after Defendant threatened to file a counterclaim to cancel Plaintiffs' "Rock Star Suites" mark is speculative.  *See, e.g.,* (ECF Nos. 96 at 2-4, 102-1 at 3).  There is no evidence to support

Defendant's argument, and, in the absence of such evidence, the undersigned will not ascribe maliciousness, bad faith, or other bad motive to Plaintiffs' decision to bring this lawsuit or seek a preliminary injunction.  Simply put, suspicions are not evidence.  *See Plant Food Sys.*, 2017 WL 4155356, at *6 (declining to find bad faith or motive without evidence).

Defendant also argues that Plaintiffs' "actions in this case have demonstrated a calculated effort to do the minimum amount of work possible to leverage their financial might through this litigation to force Defendant to abandon its company name and trademark."  (ECF No. 96 at 2).  According to Defendant, "[t]his is a blatant misuse of the law and judicial system and makes the case exceptional." *Id.*  In support of this argument, Defendant points out that Plaintiffs chose not to conduct their own consumer confusion survey, despite having the funds to do so, and allegedly conducted little pre-suit investigation.[8]  (ECF Nos. 96 at 3, 8; 102-1 at 3, 4).   Defendant's arguments, however, ignore the language in the Order on the Preliminary Injunction, explicitly finding that, "[a]lthough the Court disagrees with Plaintiffs' argument, it is unwilling to find that Plaintiffs are engaging in trademark bullying as [Defendant] contends."  (ECF No. 76 at 58).  Moreover, there is no evidence to suggest that Plaintiffs' motive in filing the Complaint and subsequent preliminary injunction motion was not a legitimate exercise to protect its trademarks and marks.

---

[8] According to Defendant, this conduct is evidence of Plaintiffs' "do as little as possible" litigation tactic.  *See, e.g.,* (ECF No. 96 at 3) (generally discussing Plaintiffs' "meager showing" during the litigation).  In addressing Defendant's arguments, the District Court noted that the absence of such a survey *could* lead to an adverse inference that the results would have been unfavorable to Plaintiffs.  (ECF No. 76 at 43 n.5).  The District Court here, however, did not make such an adverse finding.  Moreover, there is no legal requirement that a party must obtain a survey prior to filing a complaint or at an early stage in the litigation.  *See, e.g., Borinquen Biscuit Corp. v. M.V. Trading Corp.,* 443 F.3d 112, 121 (1st Cir. 2006) (noting that there is no compelling reason why survey evidence should be required at the preliminary injunction stage).  Thus, the undersigned is unpersuaded by this argument.

Based on the totality of the circumstances, and in the exercise of discretion, the undersigned agrees that Plaintiffs have not engaged in "trademark bullying" and finds that Plaintiffs' litigation conduct was not so unreasonable as to make this case exceptional.

### 3.   Considerations of Compensation and Deterrence

Lastly, the undersigned must weigh whether considerations of compensation and deterrence weigh in favor of an award of fees.  *See Octane Fitness*, 572 U.S. at 554 n.6 (quoting *Fogerty*, 510 U.S. at 534, n. 19).  For the reasons already discussed, the undersigned finds that considerations of compensation and deterrence are not implicated here.

Defendant asserts that it should be awarded fees because it is a "startup" business that was forced to spend a year's worth of revenue defending a "meritless case."  *See* (ECF No. 96 at 2).  In support of its argument, Defendant highlights the unequal financial footing of the parties, emphasizing that Plaintiffs' yearly revenue from just its Florida holdings is one thousand times Defendant's yearly revenue.  *Id.*  Thus, Defendant accuses Plaintiffs of leveraging their financial superiority to "coerce Defendant into giving up its hard-earned trademark," and argues that "[w]ith its entire business at stake, [Defendant] could not afford to follow Plaintiffs' lead in doing the bare minimum [and instead] retained a law firm with significant experience in trademark cases" and hired two experts to conduct surveys on confusion and secondary meaning.  *Id.* at 2, 3-4.

Although the undersigned is not unsympathetic to Defendant's sizeable commitment of time, effort, and money to defend this case, there is no evidence that Plaintiffs were engaged in "trademark bullying," which is conduct that should be deterred.  (ECF No. 76 at 58).  In the absence of affirmative evidence of bad faith or motive, the undersigned is not prepared to recommend an award of fees simply because a well-established corporation seeks to defend its marks against a start-up competitor with a possible similar name or marks.  *ADT, LLC v. Alarm Prot. Tech. Fla.,*

*LLC.*, No. 12-80898-CIV-MARTINEZ/GOODMAN, 2016 U.S. Dist. LEXIS 146226, at *11 (S.D. Fla. Oct. 20, 2016); *see also Louis Vuitton Malletier, S.A. v. My Other Bag, Inc*., No. 14-CV-3419 (JMF), 2018 WL 317850, at *3 (S.D.N.Y. Jan. 1, 2018 (noting that the law compels trademark owners to police their marks or risk losing their rights).  Overall, Plaintiffs' litigation conduct was not so unreasonable or its position so groundless as to trigger the need to consider compensation and deterrence.  Accordingly, the undersigned finds that considerations of compensation and deterrence are not implicated here.

### 4.  *The Totality of the Circumstances Weigh Against an Award of Fees*

Considering the totality of the circumstances—including Plaintiffs' nonfrivolous arguments in support of its claims, the lack of evidence of improper conduct during the litigation, and the absence of proof that Plaintiffs brought their claims solely because of an improper motive —the undersigned finds that Defendant has not established by a preponderance of evidence that this is an "exceptional" case that warrants the award of fees under the Lanham Act.

### C.  *Attorneys' Fees and Costs Under FDUTPA and Rule 54*

Having found that Defendant is not entitled to attorneys' fees under the Lanham Act, the undersigned will next consider whether Defendant is entitled to fees or  costs under FDUTPA or Federal Rule of Civil Procedure 54.

### 1.  *Fees under FDUTPA*

Defendant argues that it is entitled to attorneys' fees and costs under the FDUTPA claim alleged in Count IV of Plaintiffs' Complaint. *See* (ECF Nos. 1 at 18 and 96 at 12-13).  FDUTPA provides that a prevailing party "may receive [its] reasonable attorney's fees and costs from the nonprevailing party" after exhaustion of all appeals.  Fla. Stat. § 501.2105(1).  Courts have discretion to award fees under FDUTPA. *See Humane Soc. of Broward Cnty., Inc. v. Florida*

*Humane Soc.*, 951 So. 2d 966, 968 (Fla. 4th DCA 2007); *see also Alhassid v. Bank of Am., N.A.*, 688 F. App'x 753, 758 (11th Cir. 2017) (affirming a discretionary award of fees and costs under FDUTPA); *PODS Enters., LLC v. U-Haul Int'l, Inc.*, 126 F. Supp. 3d 1263, 1291-92 (M.D. Fla. 2015) (recommending against a fee award based on FDUTPA's equitable factors); *Fla. Van Rentals,* 2015 U.S. Dist. LEXIS 108129, at *12 (recommending against an award of fees and costs based on the failure to meet FDUTPA's equitable factors).

In exercising discretion under FDUTPA, courts consider, without limitation, the following factors: (i) the scope and history of the litigation; (ii) the ability of the nonprevailing party to pay fees; (iii) whether an award of fees would deter future conduct by others in similar circumstances; (iv) the merits of the parties' positions, including the nonprevailing party's culpability or bad faith; (v) whether the claim was frivolous, unreasonable, or groundless; (vi) whether the nonprevailing party raised a defense mainly to delay the case; and (vii) whether the case posed a significant legal question. *Humane Soc.*, 951 So. 2d at 971-72; *HRCC, Ltd. v. Hard Rock Cafe Int'l (USA), Inc.*, No. 6:14-CV-2004-ORL-40KRS, 2018 WL 1863778, at *4 (M.D. Fla. Mar. 26, 2018), *report and recommendation adopted*, 2018 WL 1863779 (M.D. Fla. Apr. 13, 2018); *Atmos Nation, LLC v. All Rise Records, Inc.*, No. 16-60032-CIV, 2017 WL 3635114, at *3 (S.D. Fla. July 6, 2017); *ADT*, 2016 U.S. Dist. LEXIS 146226, at *12-13; *Fla. Van Rentals,* 2015 U.S. Dist. LEXIS 108129, at *12; *see also Sodikart USA v. Geodis Wilson USA, Inc.*, No. 14–CV–22461, 2014 WL 6968073, at *6 (S.D. Fla. Dec. 9, 2014) (concluding that defendant was entitled to an award of reasonable attorney's fees and costs based on FDUTPA's equitable factors).

Here, the above factors either weigh against or are neutral on whether to award fees under FDUTPA. Specifically, as discussed above in connection with the Lanham Act's "exceptionality" analysis, the scope and history of the litigation reflects a case where—although Plaintiffs were

unable to establish the likelihood of success on the merits at the preliminary injunction stage—Plaintiffs dismissed the case with prejudice shortly after the unfavorable ruling by the District Court without engaging in protracted discovery or dispositive motion practice.  *Cf. Procaps S.A. v. Patheon Inc.*, No. 12-24356-CIV-GOODMAN, 2017 WL 3536917, at *33 (S.D. Fla. Aug. 17, 2017), *appeal dismissed*, No. 17-14147-HH, 2018 WL 4574819 (11th Cir. Apr. 30, 2018) (involving litigation lasting more than four-and-a-half years that plaintiff continued to "push" even though it was hopeless).  Thus, the limited scope and relatively brief litigation history of this case weigh against a FDUTPA fee  award.  *See, e.g.*, *Atmos Nation*, 2017 WL 3635114, at *3 (recommending against a fee award where the FDUTPA claims were never litigated or briefed).

Second, Plaintiffs' ability to pay fees is a neutral factor because Plaintiffs have the financial ability to pay an award were the Court to find that Defendant is entitled to an award.  *Id.*  Also neutral is the third factor—whether an award of fees would deter future conduct by others in similar circumstances—since there is no evidence that Plaintiffs should be deterred from properly seeking to protect their trademarks. *Cf. HRCC*, 2018 WL 1863778, at *5 (finding that an award of fees would deter others from filing baseless claims).  The fourth factor—an evaluation of the merits of the parties' positions, including the nonprevailing party's culpability or bad faith—weighs against an award of fees.  On this factor, the District Court found that Plaintiffs' loss at  the preliminary injunction stage does not mean that Plaintiffs' lacked a good faith basis to file the motion initially. (ECF No. 76 at 58-59).  Similarly, the District Court rejected the arguments that Defendant acted in bad faith regarding the change to its website or the use of the words "rock star."  *Id.* at 39-42.

Additionally, there is no evidence that Plaintiffs' claims were frivolous, unreasonable, or groundless, or that Defendant raised a defense mainly to delay the case, which results in factors five and six weighing against a fee award.  *See, e.g.*, *Fla. Van Rentals*, 2015 U.S. Dist. LEXIS

108129, at *13 (finding that whether claim was frivolous, unreasonable, groundless, or brought in bad faith weighed against an award of fees). Lastly, whether the case posed a significant legal question is a neutral factor since the case was dismissed shortly after the Court denied Plaintiffs' request for a preliminary injunction without significant legal determinations. Thus, based on the totality of the circumstances, FDUTPA's equitable factors weigh against a fee award.

2.  *Costs under FDUTPA*

Defendant's request for non-taxable costs under FDUTPA should also be denied. Under the statute, the trial judge may award the prevailing party the reasonable costs incurred in the action, Fla. Stat. § 501.2105(3); *Chow v. Chak Yam Chau*, 640 F. App'x 834, 843 (11th Cir. 2015). Defendant seeks approximately $78,317 in expert fees and for attending mediation and the preliminary injunction hearing. (ECF Nos. 96 at 13-14, 102-1 at 12). The discretionary and equitable factors outlined above, however, do not support an award of costs for the same reasons that FDUTPA does not support an award of fees. Specifically, the scope and history of the litigation reflect a case where, shortly after an adverse ruling on the preliminary injunction, Plaintiffs ended the litigation (albeit with limited motion practice) through a dismissal with prejudice. Further, there is no evidence of bad faith or maliciousness when evaluating the parties' positions or culpability and, although weak, Plaintiffs' claims were not frivolous, unreasonable, or groundless. Additionally, Defendant's defenses were not meant to delay and the case did not pose a significant legal question. Consequently, based on the totality of the circumstances and considering the equitable factors for an award under FDUTPA, the undersigned recommends that Defendant's request for non-taxable costs be denied.[9]

---

[9] Relatedly, because the equitable factors outlined above weigh against an award of fees and costs under FDUTPA, the undersigned need not determine whether the FDUTPA claim was a "tag-a-long" claim—i.e., based mostly, if not entirely, on the trademark claim or "inextricably

### 3. *Costs under Federal Rule of Civil Procedure 54*

Defendant is also not entitled to an award of costs under Federal Rule of Civil Procedure 54. Although Defendant summarily requests costs as a prevailing party under Federal Rule of Civil Procedure 54 and emphasizes that there is a "strong presumption" toward awarding costs, *see* (ECF No. 96 at 5), it has failed to provide any evidence to support its request. Pursuant to Rule 54, unless a federal statute, federal rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party. Fed. R. Civ. P. 54(d). The Court has the discretion to award those costs specifically enumerated in 28 U.S.C. § 1920, but the Court may not tax as costs anything not authorized by the statute.[10] *See, e.g.*, *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441-42 (1987). Here, Defendant has failed to file the requisite Bill of Costs and has provided nothing to support the costs enumerated in § 1920.[11] Consequently,

---

intertwined"—or whether Defendant must show that it expended separate time on the FDUTPA claim to recover fees and costs. *See, e.g.*, *Procaps*, 2017 WL 3536917, at *11 (concluding that defendant is entitled to fees and costs under FDUTPA for the entire action after distinguishing cases where courts have denied fees and costs on a summary finding that the FDUTPA claim was derivative); *but cf. ADT*, 2016 U.S. Dist. LEXIS 146226, at *14 (concluding that the FDUTPA claim was subsumed by the Lanham Act claim, thus denying entitled to attorney's fees); *Fla. Van Rentals*, 2015 U.S. Dist. LEXIS 108129, at *13 (denying fees where FDUTPA claims were predicated on the alleged trademark infringement claims and rose and fell with the trademark claims).

[10] The particular items that may be taxed as costs under § 1920 include, in pertinent part:

1. Fees of the clerk and marshal;

2. Fees and disbursements for printing and witnesses;

3. Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

4. Docket fees under section 1923 of this title; and

5. Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

[11] Under Local Rule 7.3, Defendant was required to file a Bill of Costs on form AO 133, attaching copies of supportive documentation for taxable costs. S.D. Fla. L.R. 7.3(c).

Defendant's request for taxable costs is unsupported by either Rule 54 or § 1920 and should be denied.[12]

## IV.   <u>RECOMMENDATION</u>

Accordingly, the undersigned respectfully **RECOMMENDS** that Defendant's Motion for Attorneys' Fees and Costs (ECF No. 96) be **DENIED**.

Within **fourteen** (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this district. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b). The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R.  3–1 (2018); *see Thomas v. Arn*, 474 U.S. 140 (1985).

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida, on May 20, 2019.


ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

cc:  U.S. District Judge Beth Bloom
     All Counsel of Record

---

[12] Plaintiff concedes that the only taxable cost that Defendant can recover is $97.20, which is 50% of the fees incurred for the transcript of the preliminary injunction hearing.  (ECF No. 97 at 4 n.1). Because the undersigned finds that Defendant has failed to provide evidence for any of its taxable costs, including support for reasonably recoverable transcript costs, the Court recommends against accepting Plaintiffs' concession.